# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2181

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Billy Jean Love, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 15, 2008
Filed: April 11, 2008

_____

Before BYE, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury convicted Billy Jean Love of bank robbery, a violation of 18 U.S.C. § 2113(a). Love challenges the district court's[1] evidentiary ruling sustaining the Government's objection to his counsel's cross-examination on the basis that the question asked would have elicited inadmissible hearsay testimony. We affirm.

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

According to video surveillance, on October 10, 2006, a tall African-American man wearing sneakers, dark-colored pants, a dark blue coat with diagonal stitching, a white t-shirt, a hat, and glasses entered the Twin Cities Federal Bank, a federally insured financial institution in St. Paul, Minnesota. This person robbed the bank by presenting a demand note to Genet Habtu, a bank teller. Habtu noticed, and video surveillance confirmed, that the robber had a "big gap" between his front two teeth. The robber provided Habtu with a plastic bag, which she noticed contained personal mail. Habtu placed approximately $1,400 into the bag. The robber then fled the bank.

Habtu immediately called the police and provided a description of the robber. Approximately four blocks from the bank, Officer Daniel Zebro of the St. Paul Police Department noticed Love, who matched the robber's description, carrying a plastic bag and looking around suspiciously. Officer Zebro pulled up next to Love and identified himself as a police officer. Love fled, and the police chased him through the streets and skyways of downtown St. Paul. The police eventually caught and arrested him.

Upon a search incident to arrest, the police discovered a plastic toy gun and the demand note used in the bank robbery in Love's pockets. The police also recovered the plastic bag, which contained cash, pieces of mail addressed to Ruth Love and an application for assistance bearing Love's full name and address. The officers also noticed that Love had a large gap between his front two teeth. After Love was given his *Miranda*[2] rights, FBI Agent Patrick Michaels interviewed him. Love claimed that he did not rob the bank but found the jacket and the bag of money in a nearby dumpster. Love was charged in a one-count indictment with bank robbery in violation of 18 U.S.C. § 2113(a).

---

[2]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

At trial, Agent Michaels testified as a witness for the Government. On cross-examination, Love's counsel asked: "Agent Michaels, you learned during the course of this investigation, you received information in the course of this investigation that the jacket and the bag of money in this case had been recovered from a dumpster, true?" The Government objected on hearsay grounds. At sidebar, Love's counsel argued that the statement was not being elicited for the truth of the matter asserted but for the "accuracy of the investigation, which goes to reasonable doubt as to whether all possible leads in this case were investigated properly." The Government renewed its objection on hearsay grounds and, to the extent that the statement was not offered for the truth of the matter asserted, objected on the basis of relevance. The district court sustained the objection.

Love's counsel continued to cross-examine Agent Michaels. He established that bank robbers often ditch items such as clothing and money, that the hat, glasses, and gloves worn by the robber were never recovered, and that Agent Michaels never looked for these items. In closing argument, Love's counsel argued that Agent Michaels failed to investigate properly the bank robbery. The jury returned a guilty verdict, and the district court sentenced Love to 57 months' imprisonment.

Love now appeals his conviction and seeks a new trial, arguing that the cross-examination question of Agent Michaels did not seek to elicit inadmissible hearsay testimony and that the evidence should not have been excluded. "We review a district court's evidentiary ruling for abuse of discretion, including those regarding the scope of cross-examination." *United States v. Gordon*, 510 F.3d 811, 816 (8th Cir. 2007). We also will not reverse an erroneous evidentiary ruling if the error was harmless. *United States v. McPike*, 512 F.3d 1052, 1055 (8th Cir. 2008). "An evidentiary error is harmless when, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." *Id*. (internal quotation omitted).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "[A] statement is not hearsay 'if it is offered for the limited purpose of explaining why a police investigation was undertaken.'" *United States v. Davis*, 449 F.3d 842, 847 (8th Cir. 2006) (quoting *United States v. Watson*, 952 F.2d 982, 987 (8th Cir. 1991)). Here, the cross-examination question clearly sought to introduce into evidence an exculpatory statement made by Love to Agent Michaels. This out-of-court statement was hearsay because the person testifying, Agent Michaels, was not the declarant and because the statement was offered to prove the truth of the matter asserted, namely, that Love found the jacket and money in a dumpster. Love argues that the statement was not offered to prove the truth of the matter asserted, but it was offered for the limited purpose of showing that the investigation was not thoroughly conducted. However, Love's statement reveals that the investigation was not thorough only if he indeed found the jacket and money in a dumpster. Thus, "the proffered testimony would only have its desired effect if in fact the statement[] [was] true," and being offered for the truth of the matter asserted. *United States v. Sadler*, 234 F.3d 368, 372 (8th Cir. 2000) (upholding the exclusion of defense witness testimony on the basis of hearsay). Therefore, the district court did not abuse its discretion by sustaining the hearsay objection to defense counsel's question.

Even if the district court had erred in sustaining the objection, such an error did not affect Love's substantial rights because it had little to no influence on the verdict. The Government presented overwhelming evidence of Love's guilt. The jury heard evidence that Love was near the scene of the crime immediately after the robbery; Love matched the physical description of the robber, including the distinctive large gap between his front teeth; Love was wearing the same clothes as the bank robber; Love was carrying a toy gun; Love had the demand note used in the robbery; and Love was caught with the plastic bag that contained the money, personal mail and an

assistance application with his name on it.  Thus, even if the exclusion of the cross-examination question was error, it would clearly be harmless.

Accordingly, we affirm Love's conviction.

_____